## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 21-107** |
| **JOSEPH CESPEDES** | **SECTION D (4)** |

## ORDER AND REASONS

Before the Court is Defendant Joseph Cespedes' Motion to Dismiss the Indictment.[1] The Government opposes the Motion and the Defendant has filed a Reply.[2] After careful consideration of the parties' memoranda, the record, and the applicable law, the Defendant's Motion to Dismiss is **DENIED.**

### I.    BACKGROUND

On May 18, 2021, Mr. Cespedes was charged in a one-count indictment with possessing a firearm after having been adjudicated mentally defective and committed to a mental institution in violation of 18 U.S.C. § 922(g)(4) and 18 U.S.C. § 922(a)(2).[3] Specifically, the indictment charged:

> On or about May 18, 2021, in the Eastern District of Louisiana, the defendant, JOSEPH CESPEDES, knowing he had previously been adjudicated mentally defective and committed to a mental institution, did knowingly possess a firearm, to wit: a Beretta, 1951, 9 mm semi-automatic handgun, bearing serial number 08783, said firearm having been shipped and transported in interstate commerce, in violation of Title 18 United States Code, Sections 922(g)(4) an 924(a)(2).[4]

---

[1] R. Doc. 44.
[2] R. Doc. 49 and R. Doc. 52, respectively.
[3] R. Doc. 15.
[4] *Id.*

Defendant has filed a Motion to Dismiss Indictment arguing that his indictment must be dismissed because 18 U.S.C. § 922(g)(4) is limited to commitment orders where an individual was judicially found to pose a danger to himself or others.[5] Defendant argues that, because Idaho law does not require a finding of dangerousness before a person is committed, the Idaho judge's commitment of the Defendant fails to satisfy the requirements of § 922(g)(4).[6] Defendant also argues that due process requires that a commitment order be based on a finding that an individual is both mentally ill and dangerous.[7] Finally, Defendant argues that he was never adjudicated "mentally defective" as required under § 922(g)(4) since he claims the Idaho judge found that he was gravely disabled due to mental illness.[8] Accordingly, Defendant argues his indictment must be dismissed.[9]

The Government counters that neither § 922(g)(4) or any relevant case law requires that an individual be committed based on a judicial finding that the individual was dangerous.[10] Citing the legislative history of 18 U.S.C. § 922, the Government argues that its purpose includes keeping "firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency."[11] The Government further notes that the Court in *District of Columbia v. Heller*, relied on by the Defendant in support of his motion, explicitly stated that "nothing in our opinion should be taken to cast doubt on longstanding

---

[5] R. Doc. 44.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] R. Doc. 49.
[11] *Id.,* citing *United States v. Giardina*, 861 F. ed 1334, 1337 (5th Cir. 1988).

prohibitions on the possession of firearms by felons and the mentally ill."[12] Instead, the Government contends that both § 922(g)(4) and relevant case law focuses on the level of process that accompanies a commitment and that the Idaho commitment in this matter included a judicial determination following an adversarial hearing in which the defendant was represented by counsel, two mental health professionals testified and were subject to cross-examination, additional medical reports from three different doctors who examined the defendant were entered into evidence, and the judge made findings of fact by a clear and convincing standard, thus satisfying due process standards.[13]

In reply, Defendant argues that the Government ignores relevant case law that has determined that a commitment requires a finding of dangerousness and therefore Defendant's Idaho proceeding did not qualify as a commitment sufficient to satisfy the requirement of § 922(g)(4).[14]

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c) requires an indictment to contain "a plain, concise and definite written statement of the essential facts constituting the offense charged," and to state for each count, "the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged to

---

[12] *Id.,* citing *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008).

[13] *Id.*

[14] Responding to the Government's argument in its opposition that Defendant should not be allowed to collaterally challenge the Idaho statute under which he was committed, Defendant asserts that his challenge is not "a collateral attack on his commitment or the Idaho statute." Instead, somewhat perplexingly, he alleges he is moving to dismiss the indictment because the Idaho proceeding did not qualify as "commitment" under the relevant statute. *See* R. Doc. 52.

have violated."[15]  As explained by the Fifth Circuit, "Under the Sixth Amendment, an indictment must '(1) enumerate each prima facie element of the charged offense; (2) inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions.'"[16]  According to the Fifth Circuit, "[A]n indictment is sufficient if it 'contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend.'"[17]  "It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges."[18] "Generally, an indictment which follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime of which he is charged."[19]

Rule 12(b) of the Federal Rules of Criminal Procedure permits a defendant to raise by a pretrial motion, "Any defense, objection, or request that the court can determine without a trial on the merits."[20] When considering a motion to dismiss the indictment for failure to state an offense, a court is required to "take the allegations of the indictment as true and to determine whether an offense has been stated."[21] Additionally, "A court must deny a motion to dismiss if the motion relies on disputed

---

[15] Fed. R. Crim. P. 7(c)(1).

[16] *United States v. Guzman-Ocampo*, 236 F.3d 233, 236 (5th Cir. 2000) (quoting *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996)).

[17] *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *Unites States v. Fuller*, 974 F.2d 1474, 1480 (5th Cir. 1992)).

[18] *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978) (citations omitted).

[19] *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) (internal quotation marks and citations omitted); *See United States v. Massey*, 849 F.3d 262, 264 (5th Cir. 2017) (same).

[20] Fed. R. Crim. P. 12(b)(1). The Court notes that Defendant has not indicated under which subsection of Rule 12 (b) he is relying in support of his motion to dismiss. The Court proceeds as though the Defendant is asserting that the indictment is deficient under 12(b)(3)(B)(v) for failing to state an offense.

[21] *United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 557 (N.D. Tex. 2018) (quoting *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004)) (internal quotation marks omitted).

facts."[22] According to the Fifth Circuit, "The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . . If a question of law is involved, then consideration of the motion is generally proper."[23]

## III.   ANALYSIS

The Supreme Court has identified and upheld certain "longstanding prohibitions" on firearm possession as "presumptively lawful regulatory measures."[24] Within that category, the Court specifically included prohibitions for "felons and the mentally ill," noting that "nothing in [*District of Columbia v. Heller*] opinion should be taken to cast doubt" on those restrictions.[25]

18 U.S.C. § 922(g)(4) provides:

It shall be unlawful for any person—
(4) who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The Fifth Circuit has held that "adjudicated" requires a judicial determination.[26]

---

[22] *USPlabs, LLC*, 338 F. Supp. 3d at 557; *See United States v. Covington,* 395 U.S. 57, 60 (1969) (holding that a court can resolve a pretrial motion to dismiss the indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense").

[23] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

[24] *Heller*, 554 U.S. at 626-27.

[26] *U.S. v. Tucker*, 33 F.4th 739 (May 9, 2022) (citing circuit court decisions).

Idaho Code Ann. § 66-329, Commitment to Department Director Upon Court Order—Judicial Procedure, provides for the involuntary care and treatment of mentally ill persons. Under the relevant subsection, the law provides:

> If, upon completion of the hearing and consideration of the record, and after consideration of reasonable alternative including, but not limited to, holding the proceedings in abeyances for a period of up to thirty days, the court finds by clear and convincing evidence that the proposed patient:
>
> (a) Is mentally ill; and
> (b) Is, because of such condition, likely to injure himself or others, or is gravely disabled due to mental illness
>
> the court shall order the proposed patient committed to the custody of the department director for observation, care, and treatment for an indeterminate period of time not to exceed one year. The department director, through his dispositioner, shall determine within twenty-four hours the least restrictive available facility or outpatient treatment, consistent with the needs of each patient committed under this section for observation, care, and treatment.[27]

The record reflects that a hearing was held in accord with Idaho law on July 11, 2013, in the 7th Judicial District Court for the state of Idaho, that the Defendant was present and represented by counsel during the hearing, that two mental health professionals testified and were subject to cross-examination, additional medical reports from three different doctors who examined the Defendant were introduced into evidence, and that the judge made findings of fact by a clear and convincing standard.[28] This Court has had the opportunity to review both the audio recording of

---

[27] Idaho Code Ann. § 66-329; *see also United States v. Allen,* No. 1:15-cr-00275-BLW, 2016 WL 4146074 (D. Idaho 2016) (upholding § 66-329 after Defendant challenged its constitutionality after being charged under § 922(g)(4)).

[28] *See* Exhibit A to R. Doc. 44, audio recording of the July 11, 2013 hearing in the 7th Judicial District Court for the state of Idaho; *see also* R. Doc. 49-1, Order of Commitment.

the judge's ruling following the Defendant's commitment hearing in Idaho as well as the court's written Order of Commitment.[29] Following the hearing, the judge ruled orally:

> I think that it is very clear from the testimony of the designated examiners and the medical history that that the Court has been provided that Mr. Cespedes suffers from a mental illness and because of that he is gravely disabled as the opinion of the experts here and I also think it is supported by the rather confused and dissociative thinking that was demonstrated in his own testimony and he needs to be committed for treatment otherwise there is no guarantee of that because of documentation of the difficulties that brought him here could quickly decompensate and become someone who is not only gravely disabled but is a danger to himself or others, and maybe a danger from others because of the disorganized thought processes and obvious impulsive thinking and so the court concludes that he should be committed to the authorities of the Department of Health and Welfare for treatment for a period of not to exceed one year and the evidence that was presented would make Madison County the county responsible for the costs whether or not Madison County has some reimbursement or some claim for costs from the County of Montana where he was... from whence he was brought.  I don't know but that will be the order of the court that Madison County will be the responsible county and that will be the order of the court.

Additionally, the judge issued a written Order of Commitment which stated, "The court finds by clear and convincing evidence that the proposed patient [Cespedes] is mentally ill and because of such condition is likely to injure himself or others, or is gravely disabled due to mental illness. The court also finds that the proposed patient lacks the capacity to make informed decisions about treatment."[30] The Idaho state court ordered that Defendant be "committed to the custody of the Director of the

---

[29] *Id.*
[30] R. Doc. 49-1.

Department of Health and Welfare, pursuant to Idaho Code § 66-329, for an indeterminate period of time not to exceed one year."[31] On July 11, 2013, Cespedes was committed to the Department of Health and Welfare of Idaho and spent the next six weeks in care before being discharged on August 20, 2013.[32]

Defendant makes several arguments in support of his motion. Relying on a Second Circuit case, *Richard S. v. Carpinello*,[33] Defendant asserts that a "dangerousness requirement is necessary for a civil commitment proceeding to comport with due process."[34] However, Defendant's reliance on that case for that proposition is in direct conflict with Defendant's clarification in his Reply brief that "his challenge is not . . . a collateral attack on his commitment or the Idaho statute."[35] The Court agrees with the Government that a collateral attack on Idaho law is inappropriate, and not before this Court.

Defendant next argues that § 922(g)(4) requires a judicial determination of dangerousness. In support of that proposition, Defendant relies on various cases addressing due process deficiencies and then summarily concludes, without case support, that "these same due process concerns also mandate a judicial finding of dangerousness before someone's liberty can be curtailed during commitment, and before someone is deprived of their individual rights to bear arms."[36] The Government

---

[31] *Id.*

[32] *See* R. Doc. 49-2 and R. Doc. 49-3. The arrest warrant which formed the basis of this matter was issued for Defendant after law enforcement determined that he pawned and then attempted to retrieve from the pawn shop a Beretta, 1951, 9mm semi-automatic handgun in May 2021 and displayed erratic behavior about recovering the firearm and potentially ending his life. *See* R. Doc. 1.

[33] 589 F.3d 75 (2d Cir. 2009).

[34] R. Doc. 44-1.

[35] R. Doc. 52.

[36] R. Doc. 44-1.

counters that neither § 922(g)(4) itself nor relevant case law require that an individual be committed based on a judicial finding that the individual was dangerous.[37]

Unlike the cases relied on by the Defendant, the Court finds *United States v. Bartley* factually on point and instructive here.[38] In *Bartley,* like here, the defendant was charged with unlawful possession of a firearm in violation of § 922(g)(4) based on a prior commitment.[39] His prior commitment, like here, was from an Idaho state court.[40] The defendant in *Bartley* filed a motion to dismiss the indictment on the grounds that (1) his commitment proceedings did not comport with due process; (2) he was not "adjudicated as a mental defective" or "committed to a mental institution" within the meaning of § 922(g)(4) because he was not found both mentally ill and dangerous; and (3) the application of § 922(g)(4) violated his Second Amendment right to possess a firearm.[41] The District Court, like here, denied Defendant's Motion to Dismiss and the Court of Appeals affirmed.[42] In addressing the defendant's argument that his prior commitment did not comport with due process, the Ninth Circuit distinguished *Foucha v. Louisiana*, upon which *Bartley* relied, and upon which Defendant relies, stating "Unlike in *Foucha*, Bartley is not currently confined, and his confinement after he was found not competent to stand trial was for a constitutionally valid reason."[43] Further, the Court noted Justice O'Connor's

---

[37] R. Doc. 49.
[38] 9 F.4th 1128 (9th Cir. 2021).
[39] *Id.* at 1130.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.* at 1132.

concurrence in which she emphasized *Foucha* "addresses only the specific statutory scheme before us, which broadly permits indefinite confinement of sane insanity acquittees in psychiatric facilities."[44] Further, the Ninth Circuit noted that the U.S. Supreme Court held in *Jackson v. Indiana* that "a person's civil commitment passes constitutional scrutiny even 'without a finding of dangerousness' when the commitment is 'for a reasonable period of time' necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future."[45] Finally, in addressing defendant's argument that his prior commitment did not constitute a commitment or adjudication within the meaning of § 922(g)(4) because he was not found both mentally ill and dangerous, the Court held, "Nowhere does the statute [18 U.S.C. § 922(g)(4)] or regulation require a finding that the committed person was both mentally ill and dangerous."[46] This Court agrees.[47]

This Court, too, reads text, not tea leaves. 18 U.S.C. § 922(g)(4) provides that it shall be unlawful for any person who has been "adjudicated as a mental defective or who has been committed to a mental institution" to possess a firearm.[48] Whether the Defendant was "committed" is a matter of state law, in this case—Idaho law. Idaho Code Ann. § 66-329 provides that a court make a determination regarding

---

[44] *Id.*

[45] *Id.* (citing *Jackson v. Indiana*, 406 U.S. 715, 733 (1972)).

[46] *Id.* at 1133.

[47] The Court would be remiss not to note the Idaho judge's finding, by a clear and convincing standard, that Cespedes "was likely to injury himself or others" and, further, that he "could quickly decompensate and become someone who is not only gravely disabled but is a danger to himself or others, and maybe a danger from others . . ." *See* R. Doc. 49-1; *see also* Exhibit A to R. Doc. 44, audio recording of the July 11, 2013 hearing in the 7th Judicial District Court for the state of Idaho. To the extent that the Court must address Defendant's argument that the Idaho court's findings do not equate to a finding of dangerousness, the Court rejects this argument in its entirety.

[48] 18 U.S.C. § 922(g)(4).

commitment, after an adversarial hearing, by a clear and convincing standard, whether a person (a) is mentally ill; and (b) is, because of such condition, likely to injure himself or others, or is gravely disabled due to mental illness.[49] Defendant does not argue that the Idaho proceedings failed to follow the law. Indeed, the record corroborates that the law was followed. Defendant, after being provided due process, was judicially committed to a mental institution.[50] The Fifth Circuit has confirmed that to "adjudicate" requires a judicial determination.[51] Here, Defendant was committed to the Department of Health and Welfare of Idaho by a state court judge following an adversarial hearing and a judicial determination by clear and convincing evidence.[52] Accordingly, the Court determines that Defendant was properly charged under § 922(g)(4) because he was "committed to a mental institution" as required by § 922(g)(4) and charged in the indictment.

Defendant also argues that language in the indictment that states that he had been adjudicated as "mentally defective" must be struck as the Government has provided no evidence that Defendant was ever adjudicated as such.[53] The Government does not address this argument.

18 U.S.C. § 922(g)(4) prohibits the sale of firearms to individuals who have been "adjudicated as a mental defective or ... committed to any mental institution."[54] While the Court has addressed Defendant's arguments regarding whether he had

---

[49] Idaho Code Ann. § 66-329.

[50] The Court has set out in detail compliance with Defendant's due process rights throughout the Idaho commitment proceedings.

[51] *U.S. v. Tucker*, 33 F.4th 739 (May 9, 2022) (citing circuit court decisions).

[52] *See* R. Doc. 49-1.

[53] R. Doc. 44; *see also* R. Doc. 52.

[54] *See* 18 U.S.C. § 922(g)(4).

been "committed to any mental institution," the Court further addresses Defendant's argument that he was not "adjudicated as a mental defective."

"Adjudicated as a mental defective" is defined as:

> (a) a determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease:
>> (1) Is a danger to himself or to others; or
>> (2) Lacks the mental capacity to contract or manage his own affairs."[55]

The Fifth Circuit recently held that the term "mental defective" has "long carried a particular meaning, which speaks not to generalized mental illnesses but instead to an archaic class of intellectual disability."[56] In *United States v. Tucker*, the Fifth Circuit refused to broaden "mentally defective" to "encompass any diagnosis involving a danger to oneself or others."[57]

Here, an Idaho state court judge determined by "clear and convincing evidence that [Cespedes was] mentally ill and because of such condition [wa]s likely to injure himself or others, or [wa]s gravely disabled due to mental illness."[58] The court also found that "the proposed patient lack[ed] the capacity to make informed decisions about treatment."[59] While the court did not specifically use the words "mentally defective," the court's finding that Defendant was "mentally ill" and "gravely disabled" and unable to make informed decisions support a finding of mentally

---

[55] 18 U.S.C. § 478.11(a).
[56] *United States v. Tucker*, 33F.4th 739, 745-46 (5th Cir. 2022).
[57] *Id.*
[58] *See* Exhibit A to R. Doc. 44, audio recording of the July 11, 2013 hearing in the 7th Judicial District Court for the state of Idaho; *see also* R. Doc. 49-1.
[59] *Id.*

defective under either subsection of the definition above.[60] Further, for the reasons stated herein,[61] the Idaho state court's finding meets the definition for "adjudicated as mentally defective" outlined by § 478.11(a) because the court determined that Defendant, as a result of his mental illness, was likely to injure himself or others and lacked the "capacity to make informed decisions about treatment."[62] For the reasons stated, Defendant's Motion to Dismiss the Indictment must be denied.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Indictment[63] is **DENIED**.

New Orleans, Louisiana, July 22, 2022.

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[60] *Id.*
[61] *See* fn 47.
[62] *Id.*; *see also* 18 U.S.C. § 478.11(a).
[63] R. Doc. 44.